UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shaheen Cabbagestalk, | C/A No. 5:13-02974-RMG-KDW |
| Plaintiff, | |
| v. | |
| Ms Hardin; Head Quarters Grievance Branch; DHO Ms Alyson Glidewell; Cpl Hines; Ofc Harruff; Nurse Tarcia James; Sgt S Terry; Lt Thompkins, | REPORT AND RECOMENDATION |
| Defendants. | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on cross motions for summary judgment. Plaintiff filed a Motion for Summary Judgment on December 27, 2013. ECF No. 22. Defendants filed a Response to Plaintiff's summary judgment motion on February 6, 2014, and Plaintiff filed a Reply to Defendants' Response on February 14, 2014. ECF Nos. 36, 42.

On February 6, 2014, Defendants filed a Motion for Summary Judgment. ECF No. 35. As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1] order on February 7, 2014, advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF No. 40. Plaintiff filed a Response on March 7, 2014, and Defendants replied on March 10, 2014. ECF Nos. 62, 67. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e),

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

D.S.C. Because the Motions for Summary Judgment are dispositive, a Report and Recommendation is entered for the court's review.

I.     Background

Plaintiff is an inmate and was housed within McCormick Correctional Institution ("MCI") during the time period relevant to his Complaint. ECF No. 1. Plaintiff filed his initial Complaint in state court on July 22, 2013, and Defendants removed it to federal court on October 31, 2013.[2] *Id.* In his Complaint,[3] Plaintiff alleges he was assaulted on January 11, 2013, when he was stabbed twice in the head by another prisoner. ECF No. 1-1 at 3. Plaintiff alleges that Defendant Hines and Defendant Harruff failed to protect him by not securing his cellmate. *Id.* Additionally, he maintains that Defendant Thompkins and Defendant Terry failed to properly supervise on the day of his alleged attack. *Id.* at 4. Plaintiff contends that Defendant James failed to properly treat him for his injuries when he sought medical care, and he claims that Defendant Thompkins interfered with his medical care. *Id.* Against Defendant Glidewell, Plaintiff maintains that she committed perjury which caused him to lose good time credits. *Id.* at 3. Finally, Plaintiff alleges that Defendant Hardin, of the SCDC Head Quarters Grievance Branch, failed to process many of his grievances. *Id.* at 4-6.

Plaintiff "asks for damages [to] the maximum, for constitutional violations, suffering and pain, mental distress[,] and more as the court see[s] fit." *Id.* at 9. Specifically, Plaintiff seeks $20 million for his claim against Defendant Hines; $100 million for his claim against Defendant Harruff; $7 million for his claim against Defendant James; $250,000 for his claim against Defendant Thompkins; $2 million for his claim against Defendant Terry; $250,000

---

[2] Defendants obtained a copy of the Summons and Complaint from the McCormick County Clerk of Court on October 2, 2013, but contend that service was not proper. ECF No. 1.

[3] Plaintiff filed a motion to amend his Complaint, ECF No. 30, but failed to file an amended complaint with the court as instructed, ECF No. 47.

for his claim against Defendant Thompkins and an additional $1 million for Thompkin's failure to secure a weapon from Plaintiff's alleged assaulter; $1 million for his claim against Defendant Glidewell and an additional $250,000 for each day that was taken; and $150,000 for his claim against Ms Hardin. *Id.* Additionally, Plaintiff seeks a jury trial, criminal charges against Defendants, firing of Defendants, and a transfer to the Dillon County Jail. *Id.* at 10.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is

3

such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

   III.   Analysis

Plaintiff filed this litigation pursuant to 42 U.S.C. § 1983 alleging federal and state law claims against eight Defendants. Plaintiff moves for summary judgment on the claims in his Complaint. Defendants have also filed a Summary Judgment Motion arguing that they are entitled to judgment as a matter of law as to all of Plaintiff's claims. Because Plaintiff's allegations vary as to the multiple Defendants, this Report discusses Plaintiff's and Defendants' motions as to each Defendant or group of Defendants as appropriate.

   A.   Defendants' Motion for Summary Judgment

      1.   Failure to Serve (Defendant Harruff)

As an initial matter, Defendants argue that Plaintiff's action against Defendant Harruff should be dismissed for lack of service. ECF No. 35-1 at 1-2. Specifically, Defendants maintain that more than 120 days have passed since Plaintiff filed his Complaint, and Defendant Harruff has yet to be served. *Id.* Moreover, Defendants argue that SCDC cannot locate an employee named Harruff at MCI and thus, refuse to accept service for this Defendant. *Id.* at 2. Therefore, they maintain he should be dismissed as a Defendant. Plaintiff briefly mentions Defendant Harruff in his Response and asserts that Harruff and Ms. Broadwater were both fired to prevent them from "tell[ing] the truth" about Plaintiff's

4

claims. ECF No. 62 at 1, 2. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the court must dismiss an action without prejudice if a defendant is not served within 120 days after the complaint is filed. Based on Plaintiff's failure to respond to Defendant's argument that he failed to timely serve Defendant Harruff, the undersigned finds that Plaintiff does not oppose this argument and wishes to abandon a cause of action against Defendant Harruff. *See Ballard v. Carlson*, 882 F.2d 93, 95-96 (4th Cir.1989) (holding a complaint may be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and/or failure to comply with orders of the court).

        2.      Failure to Protect (Defendant Hines)

Plaintiff maintains a prisoner in cell #45 stabbed him in the head. ECF No. 1-1 at 3. Plaintiff argues the prisoner who allegedly stabbed him was not secured in handcuffs as proper training requires. *Id.* Specifically, Plaintiff maintains that Cpl. Hines failed to handcuff the prisoner. *Id.* Further, Plaintiff maintains that even if the prisoner was "cuffed" that two-man cells need to be done away with. *Id.* Defendants argue that Plaintiff has failed to state a claim against Hines for which relief may be granted.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). To establish a claim for failure to protect from violence, an inmate must show: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," *id.* at 834, and (2) that the prison officials had a "sufficiently culpable state of mind." *Id.* (internal citations and quotations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (internal citations omitted). To

5

be deliberately indifferent, a prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

Defendant Hines offers an affidavit in support of Defendants' motion for summary judgment on Plaintiff's failure-to-protect claim. Hines Aff., ECF No. 35-4. Defendant Hines attests that he has no personal recollection of any incident involving the Plaintiff being assaulted by his cellmate. *Id.* at ¶7. Though Defendant Hines recalled that Plaintiff reported to an SCDC officer that his cellmate assaulted him, Defendant Hines avers that no officer witnessed the alleged assault. *Id.* at ¶8. Defendant Hines maintains that had an incident like this occurred, officers would have immediately used chemical munitions in an attempt to control the situation and completed an incident report. *Id.* at ¶7. Defendant Hines attests that SCDC personnel cannot locate an incident report involving Plaintiff on January 11, 2013. *Id.* Defendant Hines does not recall if Plaintiff had any visible injuries as a result of the assault; however, he recalls that Plaintiff was seen by medical personnel. *Id.* at ¶8.

In his Response, Plaintiff contends Defendant Hines should have restrained his cellmate and was "improperly trained [on how] to secure prisoners in 2 man cells. . . ." ECF No. 62 at 2. Plaintiff asserts Defendant Hines failed to protect him and the explanation provided in his affidavit shows that Hines and other staff knew the issue of restraining inmates in a two-man cell posed a safety hazard for prisoners.[4] *Id.* at 3. Here, the record does not establish that that Defendant Hines or any prison official knew of, and disregarded, an excessive risk to Plaintiff's safety. Furthermore, the record indicates Plaintiff received medical care after he alerted officers that he his cellmate assaulted him. Accordingly, the undersigned recommends that Defendant Hines be granted summary judgment on this claim.

---

[4] Plaintiff also states that he knows how to cuff two people at the same time but will not divulge it until he has a copyright and SCDC pays him. ECF No. 62 at 2.

6

### 3. Failure to Supervise or Train (Defendants Terry and Thompkins)

Defendants contend summary judgment is proper because Defendants Terry and Thompkins had no knowledge of the alleged incident nor does Plaintiff claim Defendant Terry was present for it. ECF No. 35-1 at 9. Defendants further argue that Plaintiff failed to state constitutional claims against Defendants Terry and Thompkins, and the claims against them should be dismissed as a matter of law. *Id.* at 9-10. In his Complaint, Plaintiff maintains that Defendants were supervisors on the day he was assaulted. ECF No. 1-1 at 4. Plaintiff specifically claims that Defendant Terry failed to properly train officers who were responsible for his safety. *Id.*

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. To successfully pursue such a theory, Plaintiff must demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id.*; *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

Plaintiff's Complaint alleges that some Defendants acted with deliberate indifference to his safety needs. However, Plaintiff failed to show facts that establish any of the Defendants acted with indifference. Instead the record establishes that no SDDC officer witnessed the alleged assault on Plaintiff. Therefore, the undersigned finds that Plaintiff has failed to establish a causal link between any action or inaction on the part of the SCDC

personnel and their supervisors. To the extent Plaintiff attempts to rely on the doctrine of supervisory liability to hold Defendants Terry or Thompkins liable on his safety indifference claims, the undersigned recommends that summary judgment be granted to these Defendants.

### 4.     Perjury in Disciplinary Action (Glidewell)

Plaintiff contends that Disciplinary Hearing Officer, Defendant Glidewell, has committed perjury and "based a[] Decision under false pretense." ECF No. 1-1 at 3. Plaintiff maintains that Glidewell's alleged perjury damaged him because he lost "[g]ood time, [and] forced [him]to be unable to elevate from level 3 to [a] level 2 compound. . . ." *Id.* Defendant Glidewell contends that she is entitled to summary judgment on this claim because Plaintiff failed to assert facts upon which relief can be granted. ECF No. 35-1 at 2-5.

The undersigned recommends summarily dismissing Plaintiff's civil action against Defendant Glidewell for "perjury," because perjury is not a recognized civil action but a crime under the South Carolina Code. *See e.g.*, *White v. Stacher*, CA.6:05 1737-GRA-WMC, 2006 WL 1207857 at *6 (D.S.C. May 1, 2006) ("[T]here are no civil actions for perjury, subornation of perjury, stalking, and kidnaping. All of these are crimes under the South Carolina Code."). To the extent the court construes Plaintiff's cause of action against Defendant Glidewell as a disciplinary cause of action, the undersigned recommends granting Defendants' summary judgment motion because Plaintiff's disciplinary cause of action is not a cognizable § 1983 cause of action. Plaintiff's Complaint alleges that Glidewell's perjury "caused him to be punished for something that is not in SCDC policy." ECF No. 1-1 at 3. "[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). The *Heck* holding was extended to the context of

8

inmate disciplinary convictions in *Edwards v. Balisok*, 520 U.S. 641 (1997). Here, there is no evidence that Plaintiff's disciplinary action was overturned. Therefore, a § 1983 challenge is barred. *Battle v. Eagleton*, 8:07-CV-1841-GRA-BHH, 2008 WL 2952349, at *5 (D.S.C. July 28, 2008) (4th Cir. 2009) ("A prisoner cannot bring a § 1983 action challenging a disciplinary proceeding resulting in the loss of good-time credits if the possible relief would necessarily imply the invalidity of the punishment imposed, unless the disciplinary action was previously invalidated."). Accordingly, the undersigned recommends that Defendant Glidewell be granted summary judgment on Plaintiff's claim(s) against her.

5. Medical Indifference (Nurse James and Defendant Thompkins)

Defendants maintain that Defendant James should be granted summary judgment on Plaintiff's medical indifference claim against her because he (1) failed to show a serious medical need and (2) failed to show that Defendant James acted with deliberate indifference to his medical needs. ECF No. 35-1 at 12-13. Additionally, Defendants maintain that Plaintiff failed to state a constitutional violation against Defendant Thompkins because he is not a medical provider and had the right to rely on the medical opinions of the licensed medical providers. *Id.* at 14.

In order to prevail on a cause of action for deliberate indifference to medical needs, Plaintiff must show that the named defendants were deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, at 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that each Defendant knew of and disregarded the risk posed by the Plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 837. In cases involving the denial of or the delay in providing medical treatment to a prisoner, the

9

prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. *Sosebee v. Murphy*, 797 F.2d 179, 183 (4th Cir. 1986). The Fourth Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Plaintiff contends that Defendant James failed to properly attend to his medical injuries. ECF No. 1-1 at 4. Specifically, Plaintiff claims he "leaked [b]lood from the right side of [his] head and top back from being stabbed in it." *Id.* Plaintiff claimed that Defendant James only put "glue" on his head, gave him ointment, and nothing for his pain. *Id.* In his Response to Defendants' Motion for Summary Judgment, the Plaintiff maintains that his medical records demonstrate that he was assaulted and suffered a severe injury. ECF No. 62 at 1. In his Complaint, Plaintiff alleges that Defendant Thompkins interfered with his medical care and was "busy chasing Nurse Tarcia James." ECF No. 1-1 at 4, 9.

In support of their argument, Defendants offer Defendant James' affidavit and Plaintiff's medical records. ECF No. 35-7; 35-9. Defendant James attests that she assessed Plaintiff on January 11, 2011, after he indicated to her that he had been in an altercation with his cellmate. James Aff., ECF No. 35-7 at ¶3. Defendant James avers that upon examination, Plaintiff had abrasions to the left side of his head, face, and upper lip. *Id.* However, the "injuries were not severe, but were essentially minor scratches and abrasions" *Id.* To treat Plaintiff, Defendants James cleaned the wound with soap and water and applied Dermabond

10

to a wound on Plaintiff's head, applied antibiotic ointment to the abrasion on his upper lip, and gave Plaintiff a tetanus shot. *Id.* Defendant James opined that Plaintiff's injuries did not require that he be taken to the emergency room. *Id.* at ¶4. On January 14, 2013, Defendant James saw Plaintiff again, and it appeared that all of his wounds were healing well and there were no signs of infection. *Id.* at ¶5. At that time, Plaintiff complained of headaches, and Defendant James instructed Plaintiff to take a Motrin or Tylenol for them. *Id.* Later the same day, Dr. McRee reviewed Defendant James' medical notes, and prescribed Plaintiff Naproxen. *Id.*

The undersigned finds that Plaintiff has not offered any evidence that would support a finding that Defendants James or Thompkins intentionally or recklessly disregarded Plaintiff's medical needs. Further, the record before the court reveals that Plaintiff was treated for the injuries he sustained on January 11, 2013, as well as January 14, 2013. Although Plaintiff may disagree with the amount of treatment he received or may object to the medical staff's attitude towards him, such allegations do not constitute a constitutional deprivation. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary). Though Plaintiff admits to seeing medical staff and being "treated" for his cuts, he argues Defendant James did not properly attend to him. ECF No. 62 at 1; ECF No. 1-1 at 4. Plaintiff's admission indicates that his claim is more akin to a claim of neglect or malpractice and does not meet the standard for a plausible claim under § 1983. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). As the *Wright* court articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a

>physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Id.* (internal citations omitted). Here, at best, Plaintiff's claim amounts to medical malpractice and is not a proper § 1983 claim. *See id.* The undersigned finds that the record does not contain facts that demonstrate Defendants knew of and disregarded Plaintiff's serious medical needs. Thus, Plaintiff has failed to demonstrate he is at risk based on his medical state. Therefore, the undersigned recommends that Defendants be granted summary judgment to Defendant James and Defendant Thompkins on Plaintiff's medical indifference claim.

6. Failure to Process Grievances/Right to Access to Courts (Hardin)

Defendants argue that Plaintiff has failed to state a cause of action under § 1983 concerning his grievances because he has no constitutional right regarding the grievance procedure. ECF No. 35-1 at 25. Plaintiff argues Hardin failed to process his grievances which violates his procedural due process rights and access to courts rights. ECF No. 1-1 at 5-6.

The undersigned finds that Plaintiff's claims against Defendant Hardin are without merit. Inmates do not have a constitutionally protected right to a grievance procedure within the prison system under the Due Process Clause, or any other statute. *See Adams v. Rice*, 40 F.3d at 75 (finding "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Thus, there is no constitutional right to file a grievance, nor is there a constitutional right to have a grievance timely determined within the prison system.

The right of access to the courts is the right to bring to court a grievance that the inmate wished to present and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996). In

12

order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723–24 (4th Cir. 1989). Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55.

Though Plaintiff argues he was denied access to the courts in his Complaint, the record shows that Plaintiff offered no evidence to establish a denial of access to the courts, or that he suffered any harm in any court action he had pending. On the contrary, Plaintiff has filed several state and federal actions, refuting his denial of access claim. The undersigned therefore recommends that Defendant Hardin be granted summary judgment on Plaintiff's claims for failure to process grievances and denial of access to courts. Though Plaintiff's specific cause of action against Defendant Headquarters Grievance Branch is unclear,[5] any claim against said Defendant should also be summarily dismissed for the aforementioned reasons.

7. Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 35-1 at 28. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

---

[5] Although listed as a separate Defendant, it appears that Head Quarters Grievance Branch was a descriptor for Defendant Hardin. *See* ECF No. 1-1 at 4.

established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

### 8. Eleventh Amendment/Official Capacity

Defendants argue that as employees of the SCDC they are not subject to suit in their official capacities. ECF No. 35-1 at 30-31. The undersigned agrees. The Eleventh

Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendants are agents or employees of the State of South Carolina, when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A State cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

  B.  Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment and argues that his medical records and correspondences prove his claims against Defendants. ECF No. 22.

The undersigned considered Plaintiff's summary judgment arguments when evaluating Defendants' motions for summary judgment, and having found that Defendants

are entitled to summary judgment on Plaintiff's constitutional claims, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied. The undersigned further recommends that the court decline to exercise supplemental jurisdiction over any claim for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Plaintiff's Motion for Summary Judgment, ECF No. 22, be denied, and Defendants' Motion for Summary Judgment, ECF No. 35, be granted and that this case be dismissed. If the court accepts this recommendation, Plaintiff's pending Motion for Sanctions and Motion to Compel, ECF No. 104, and Plaintiff's pending Motion for issuance of Subpoena, ECF No. 110, will be moot.

IT IS SO RECOMMENDED.

June 2, 2014                                                                    Kaymani D. West
Florence, South Carolina                                                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**